NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| Jose CAMARGO ALEJO,<br><br>　　　　　　　　Plaintiff,<br><br>vs.<br><br>VISTA DETENTION FACILITY, et al.<br>　　　　　　　　Defendants | Case No.: 25-cv-0258-AGS-BJW<br><br>**ORDER: (1) GRANTING MOTION TO PROCEED IN FORMA PAUPERIS (ECF 25);**<br>**(2) DENYING MOTION FOR PRELIMINARY INJUNCTION AND/OR TEMPORARY RESTRAINING ORDER (ECF 24);**<br>**AND (3) DISMISSING AMENDED COMPLAINT (ECF 17)** |

Plaintiff Jose Camargo Alejo is proceeding pro se with a civil-rights action under 42 U.S.C. § 1983. The Court previously denied Camargo's request to proceed without prepayment of the filing fee and dismissed the action without prejudice. (ECF 3.) Camargo thereafter moved to proceed *in forma pauperis* (IFP), for appointment of counsel, for preliminary injunctive relief, to amend her complaint, and for extension of time. (ECF 9–13.) She also filed an amended complaint (ECF 17), followed by several "supplemental documents" (ECF 18–22), in which she alleges defendants violated her Eighth Amendment rights by failing to provide her with adequate medical care for her eye condition.

The Court denied her motions, granted her an extension of time to submit a copy of her trust account statement in support of her request to proceed IFP, and noted that her case could not be reopened until she filed a properly supported IFP request. (ECF 21.) Undeterred, Camargo moved yet again for preliminary injunctive relief. (ECF 24.) Finally, about a month later, she filed a copy of her prison trust account statement, which this Court construes as a renewed IFP motion. (*See* ECF 25.) Plaintiff has also filed another "supplemental document" which includes additional exhibits in support of her amended

1  complaint. (ECF 27.)

2  The Court has reviewed all the relevant documents and, for reasons discussed below, grants plaintiff's IFP motion, denies the motion for preliminary-injunctive relief, and dismisses the amended complaint for failure to state a claim.

## IFP REQUEST

Parties instituting any civil action in a federal district court must typically pay filing fees of $405, which includes a $350 filing fee and a $55 administrative fee. 28 U.S.C. § 1914(a); Judicial Conference Schedule of Fees, District Court Misc. Fee Schedule, § 14 (eff. Dec. 1, 2023). An action may proceed without payment of fees at the time of filing only if the court grants the plaintiff leave to proceed IFP. *See* 28 U.S.C. § 1915(a); *Hymas v. United States Dep't of the Interior*, 73 F.4th 763, 765 (9th Cir. 2023). Incarcerated plaintiffs who are granted IFP status need not pay the $55 administrative fee, *see* 28 U.S.C. § 1914(a); Judicial Conference Schedule of Fees, District Court Misc. Fee Schedule, §14 (eff. Dec. 1, 2023), but they must eventually repay the $350 filing fee in installments. *See* 28 U.S.C. § 1915(b)(2); *Bruce v. Samuels*, 577 U.S. 82, 84 (2016).

After Camargo filed her prison trust account statement with the court, she was released from state custody and is now in the custody of Immigration and Customs Enforcement. (ECF 26.) Because "the term 'prisoner' does not encompass a civil detainee for the purposes of [28 U.S.C. § 1915]," a person "detained by the [immigration authorities] pending deportation is not a 'prisoner'" under that statute. *Agyeman v. I.N.S.*, 296 F.3d 871, 886 (9th Cir. 2002). So, the Court reviewed plaintiff's affidavit of assets (*see* ECF 2) just as it would for any other non-prisoner litigant seeking IFP status. The affidavit sufficiently shows that plaintiff is unable to pay the fees or post securities required to maintain a civil action. *See* S.D. Cal. CivLR 3.2(d). Plaintiff's IFP motion is granted.

## SCREENING

**A.    Legal Standard**

The Court must screen plaintiff's amended complaint and dismiss it to the extent it is frivolous, malicious, fails to state a claim or seeks damages from defendants who are

immune. *See* 28 U.S.C. § 1915(e)(2)(B). "The standard for determining whether a plaintiff has failed to state a claim upon which relief can be granted under § 1915(e)(2)(B)(ii) is the same as the Federal Rule of Civil Procedure 12(b)(6) standard for failure to state a claim." *Watison v. Carter*, 668 F.3d 1108, 1112 (9th Cir. 2012). That is, a complaint must "contain sufficient factual matter . . . to state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (internal quotation marks omitted). While detailed factual allegations are not required, "[t]hreadbare recitals of the elements of a cause of action supported by mere conclusory statements, do not suffice" to state a claim. *Id.* The mere "possibility of misconduct" or "unadorned, the defendant-unlawfully-harmed me accusation[s]" fall short of meeting this plausibility standard. *Id.*

**B.      Plaintiff's Allegations**

Camargo alleges that sometime between July and November of 2023, she was diagnosed with "keratoconus," a degenerative eye condition that causes the cornea to get thinner and bulge outward into a cone shape. (ECF 17, at 6; *see also* ECF 18, at 8.) At some point after her diagnosis, Camargo was transferred to the Vista Detention Facility. (ECF 17, at 4.) While there, plaintiff informed officials of her eye condition and requested medical treatment. (*Id.*) She further explained to Vista Detention's "medical and optometry" staff that she suffered from eye "dryness, straining and blackouts" and needed a "cornea transplant or eye surgery before [she goes] blind." (*Id.* at 6–7.)

Camargo filed grievances about a delay in getting the kind of medical treatment she sought. (ECF 17, at 5, 7–8; *see also* ECF 18.) She also "sought additional help" by contacting "Internal Affairs," but she received no response. (ECF 17, at 5.) While plaintiff states she was dissatisfied with the outcome of her grievances, she acknowledges that in response to her "last grievance," she was scheduled to be seen by an "optometrist for tinted glasses." (*Id.* at 8.) Camargo states, however, that officials failed to appreciate the urgency of her condition and that she needed to be "assisted immediately." (*Id.* at 8.) She continued to complain of "ongoing pain in [her] eyes." (*Id.* at 9.)

While the timeline of events is not clear, it appears plaintiff was eventually seen by

1  "medical," "optometry," and a "private doctor." (*Id.* at 6.) On some unspecified date, a
2  Vista Detention optometrist performed a "regular eye exam" on Camargo, after which the
3  optometrist "placed [plaintiff] on a waiting list" to see a specialist. (*Id.* at 14.) Supplemental
4  exhibits show Camargo was informed she was on the waiting list to see an outside specialist
5  as early as October 14, 2024. (ECF 24-2, at 12.) And as early as December 11, 2024, she
6  was notified that an ophthalmology appointment was "pending." (*See id.* at 10.)

7  Sometime around "January 2025 – March 2025," plaintiff was taken to see an
8  "outside doctor," who concluded that she suffered from "mild keratoconus." (*Id.*) Camargo
9  alleges this "private citizen doctor" failed to adequately examine her and "did no tests."
10 (*Id.*) The outside doctor prescribed eye drops, but Camargo did not receive them
11 immediately upon returning to Vista Detention. (*Id.* at 11.) She only got the drops after
12 "bugging" the nurses there. (*Id.*) As a result of these treatment delays, Camargo suffered
13 ongoing pain. (*Id.* at 9.)

14 In April 2025, plaintiff was transferred from Vista Detention Facility to Wasco State
15 Prison. (ECF 5). While at Wasco, she was seen by a doctor who told her she had a "scar
16 on [her] right eye." (ECF 17, at 13.) The doctor also told plaintiff she needed a "square
17 contact lens" to protect her cornea. (*Id.*)

18 Sometime before June 1, 2025, it seems Camargo was transferred from Wasco State
19 Prison to R.J. Donovan Correctional Facility. (*See* ECF 15, at 1.) On September 4, 2025,
20 Camargo was released from California state custody and was taken into ICE custody. (*See*
21 ECF 26.)

22 **C.   Discussion**

23 To state a civil-rights claim under 42 U.S.C. § 1983, a plaintiff must allege: (1) a
24 right secured by the Constitution or laws of the United States was violated; and (2) the
25 alleged violation was committed by "a person" acting under the color of state law. *West v.*
26 *Atkins*, 487 U.S. 42, 48 (1988). Camargo alleges her Eighth Amendment right to adequate
27 medical care was violated, and she names seven defendants, who are discussed below.
28 (ECF 17, at 3–4.)

4

### 1. *Eighth Amendment Standard*

"Prison officials violate the Eighth Amendment if they are deliberately indifferent to a prisoner's serious medical needs." *Peralta v. Dillard*, 744 F.3d 1076, 1081 (9th Cir. 2014) (quoting *Estelle v. Gamble*, 429 U.S. 97, 104 (1976) (cleaned up)). A medical need is serious if failure to treat it will result in "significant injury or the unnecessary and wanton infliction of pain." *Jett v. Penner*, 439 F.3d 1091, 1096 (9th Cir. 2006) (internal quotation marks omitted).

A prison official is deliberately indifferent to that need if he "knows of and disregards an excessive risk to inmate health." *Farmer v. Brennan*, 511 U.S. 825, 837 (1994). "[T]o show deliberate indifference, the plaintiff must show that the course of treatment the doctors chose was medically unacceptable under the circumstances and that the defendants chose this course in conscious disregard of an excessive risk to the plaintiff's health." *Hamby v. Hammond*, 821 F.3d 1085, 1092 (9th Cir. 2016) (cleaned up). While deliberate indifference "may appear when prison officials deny, delay or intentionally interfere with medical treatment, or . . . by the way in which prison physicians provide medical care," *Jett*, 439 F.3d at 1096, it "is a high legal standard," *Toguchi v. Chung*, 391 F.3d 1051, 1060 (9th Cir. 2004). Inadvertent failures to provide adequate medical care, mere negligence or medical malpractice, delays in providing care (without more), and differences of opinion over what medical treatment or course of care is proper are all insufficient to constitute an Eighth Amendment violation. *Estelle*, 429 U.S. at 105–07; *Sanchez v. Vild*, 891 F.2d 240, 242 (9th Cir. 1989); *Shapley v. Nevada Bd. of State Prison Comm'rs*, 766 F.2d 404, 407 (9th Cir. 1985). Moreover, a plaintiff must "demonstrate that the defendants' actions were both an actual and proximate cause of [his] injuries." *Lemire v. California Dep't of Corrections & Rehabilitation*, 726 F.3d 1062, 1074 (9th Cir. 2013).

The Court presumes Camargo's keratoconus constitutes a serious medical need. The only question then is whether she has plausibly alleged any defendant acted with deliberate indifference to that need.

### 2. *Individual Supervisory Defendants*

Camargo has failed to state a claim against defendants "Warden" and "Chief of Security." "Under Section 1983, supervisory officials are not liable for actions of subordinates on any theory of vicarious liability." *Crowley v. Bannister*, 734 F.3d 967, 977 (9th Cir. 2013). Camargo alleges only that Defendants "Warden" and "Chief of Security" are "in charge of" inmate safety. (ECF 17, at 3–4.) But there are no facts suggesting that either defendant took any specific action (or inaction) regarding Camargo's medical care. (*See* ECF 17, at 15.) Camargo's broad and conclusory allegations fail to plausibly show how, or to what extent, Vista Detention Facility's "Warden" or "Chief of Security" may be held individually liable for any constitutional injury. *See Jones v. Cmty. Redev. Agency of City of Los Angeles*, 733 F.2d 646, 649 (9th Cir. 1984) (stating that even pro se plaintiffs must "allege with at least some degree of particularity overt acts which defendants engaged in" to state a claim).

### 3. *Individual Doctors*

Camargo also fails to state a claim against defendants "Optometry Doctor" and "Private Citizen Doctor." First, Camargo acknowledges she was examined by Vista Detention's "Optometry Doctor" but argues it was inadequate. (ECF 17, at 14.) To establish deliberate indifference, however, Camargo "must show that the course of treatment the doctors chose was medically unacceptable under the circumstances and that the defendants chose this course in conscious disregard of an excessive risk to plaintiff's health." *Colwell v. Bannister*, 763 F.3d 1060, 1068 (9th Cir. 2014) (cleaned up). Camargo states that the Optometry Doctor conducted only a "regular eye exam," after which he placed Camargo on the waiting list to see an outside specialist. (ECF 17, at 14.) She also indicates she was "given regular eye drops after [seeing] medical." (*Id.* at 9.) Nothing alleged in the amended complaint suggests defendant Optometry Doctor's treatment was "medically unacceptable under the circumstances" and therefore Camargo has failed to state a claim against him. *See Hamby*, 821 F.3d at 1092.

Camargo also acknowledges she saw the outside specialist, defendant "Private

Citizen Doctor,"[1] sometime in early 2025. This doctor concluded Camargo had a "mild" case of keratoconus and prescribed eye drops.[2] (ECF 17, at 9–10.) Plaintiff argues the treatment provided was inadequate because the doctor did "no tests" and merely evaluated her vision and discussed her medical history. (*Id.* at 9.) Camargo contends the doctor should have provided her with "square contacts," as a doctor at Wasco State Prison suggested or scheduled her for cornea transplant surgery. (*Id.* at 7, 13.) But plaintiff's subjective belief that she was entitled to a more aggressive course of treatment does not mean the doctor's actions were unreasonable under the circumstances. *See Estelle*, 429 U.S. at 107. A mere "difference of opinion" between an inmate and prison medical personnel regarding appropriate medical treatment "does not amount to a deliberate indifference to [Camargo's] serious medical needs." *See Sanchez*, 891 F.2d at 242; *see also King v. Kuersten*, No. 2:21-cv-02250-TLN-JDP (PC), 2023 WL 2841073, at *2 (E.D. Cal. Apr. 7, 2023) ("Faced with an outside provider's assessment that plaintiff's keratoconus was mild, defendants were, at most, negligent in failing to seek out a second opinion from a different specialist.").

Finally, to the extent Camargo argues her Eighth Amendment rights were violated because her treatment was delayed, she has also failed to state a claim against either doctor. A mere delay in treatment does not constitute a violation of the Eighth Amendment unless the delay causes "substantial harm." *Wood v. Housewright*, 900 F.2d 1332, 1335 (9th Cir. 1990). Here, it is impossible to even determine the extent of any purported delay in care because Camargo provides only a vague timeline of events and no specific dates for when

---

[1] Camargo alleges this outside specialist "works for Vista Detention Facility." (ECF 17, at 4.) The Court presumes state action for purposes of screening. *See George v. Sonoma Cty. Sheriff's Dep't*, 732 F. Supp. 2d 922, 934 (N.D. Cal. 2010) ("A private physician or hospital that contracts with a public prison system to provide treatment for inmates performs a public function and acts under color of law for purposes of § 1983.").

[2] While Camargo suggests there was some delay in getting the prescribed eye drops, she attributes it to Vista Detention staff, not to the outside specialist. (ECF 17, at 11.)

she entered Vista Detention custody, when she was first seen by Vista Detention medical personnel or when she was seen by the Vista Detention optometrist and outside specialist. Camargo has also failed to allege sufficient facts to show a delay in treatment caused her "substantial harm."

Therefore, plaintiff has failed to state an Eighth Amendment claim against defendants "Optometrist Doctor" and "Private Citizen Doctor."

### 4. *Municipal Department and Official-Capacity Defendants*

Camargo names several municipal departments as individual Defendants, including Vista Detention Facility itself as well as Vista Detention's Internal Affairs and Medical sections. (ECF 17, at 4–5.) She sues all seven defendants in their official capacities. (*Id.*)

Local governments and municipalities are "persons" subject to liability under Section 1983. *Monell v. Department of Social Servs.*, 436 U.S. 658, 690 (1978). But their "departments" and "sub-units" "are not generally considered 'persons' within the meaning of Section 1983." *Jay v. Medical Dep't of Fresno Cnty. Jail*, No. 1:10-cv-00685-GBC (PC), 2011 WL 3875523, at *4 (E.D. Cal. Sept. 1, 2011) (collecting cases dismissing correctional facilities and law enforcement departments as improper defendants under § 1983). So, Vista Detention Facility and its sub-units are not proper defendants.

Official-capacity suits, however, "generally represent [] another way of pleading an action against an entity of which an officer is an agent.'" *Kentucky v. Graham*, 473 U.S. 159, 165 (1985) (citations omitted) (quoting *Monell*, 436 U.S. at, 690 n.55). "[A]n official-capacity suit is, in all respects other than name, to be treated as a suit against the entity." *Graham*, 473 U.S. at 166. Thus, to the extent Camargo names all Defendants in their official capacities, she is, in effect, suing the County of San Diego.

To establish § 1983 liability by a local government, such as the County of San Diego, plaintiffs must show that: (1) they "possessed a constitutional right of which [they were] deprived"; (2) "the municipality had a policy"; (3) "this policy amounts to deliberate indifference to the plaintiff's constitutional right"; and (4) "the policy is the moving force behind the constitutional violation." *Dougherty v City of Covina*, 654 F.3d 892, 900–01

(9th Cir. 2011) (alterations in original; internal quotation marks and citation omitted).

Camargo alleges that Vista Detention had an unofficial policy of prioritizing inmates with injuries or medical emergencies for "immediate medical care." (ECF 17, at 8.) Presuming this was County policy, Camargo has not stated a claim because she has not shown how such a policy amounted to deliberate indifference to her medical needs. As discussed above, while in Vista Detention's custody, Camargo was seen by both an optometrist and an outside specialist. While plaintiff is clearly unsatisfied with the treatment she received, she has not plausibly alleged deliberate indifference on the part of either doctor. Nor has she alleged facts to show how a policy to prioritize emergency injuries for immediate medical care amounted to deliberate indifference. And without a constitutional violation, "there can be no municipal liability." *Villegas v. Gilroy Garlic Festival Ass'n*, 541 F.3d 950, 957 (9th Cir. 2008). Thus, plaintiff's municipal-liability claim against the County—and her official-capacity claims against each defendant—all fail.

**D.   Leave to Amend**

The Court dismisses plaintiff's amended complaint in its entirety for failure to state a claim upon which relief can be granted, but it will give her another opportunity to amend her pleading. *See Lopez v. Smith*, 203 F.3d 1122, 1130 (9th Cir. 2000) ("[A] district court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts." (citation omitted)); *Cato v. United States,* 70 F.3d 1103, 1106 (9th Cir. 1995) ("A pro se litigant must be given leave to amend his or her complaint, and some notice of its deficiencies, unless it is absolutely clear that the deficiencies of the complaint could not be cured by amendment." (citation omitted)).

**MOTION FOR PRELIMINARY INJUNCTIVE RELIEF**

In Camargo's "amended" motion for preliminary injunctive relief, she again seeks an order requiring that she be provided with "scleral contact lenses" and other treatment for her keratoconus. (ECF 24, at 1–2.) Yet, since initiating this action, plaintiff has been

released from state custody and taken into ICE custody, where she appears to remain. (*See* ECF 26.) "When an inmate challenges prison conditions at a particular correctional facility, but has been transferred from the facility and has no reasonable expectation of returning," the inmate's claim for injunctive relief is moot because the inmate is no longer subjected to the allegedly unconstitutional policies. *Pride v. Correa*, 719 F.3d 1130, 1138 (9th Cir. 2013) (citation omitted). Because there is no reasonable expectation nor demonstrated probability that Camargo will again be subjected to the conditions at Vista Detention Facility from which she seeks injunctive relief, her motion for injunctive relief is denied as moot.

## CONCLUSION

Accordingly, the Court orders as follows:

1. Camargo's motion to proceed *in forma pauperis* is **GRANTED**.
2. The amended complaint is **DISMISSED** in its entirety for failure to state a claim.
3. The amended motion for a preliminary injunction and temporary restraining order is **DENIED**.
4. The Court grants Camargo leave to amend. By **January 2, 2026**, Camargo must file any second amended complaint, addressing the deficiencies identified in this order. Any amended pleading must be complete without reference to previous pleadings. If plaintiff fails to timely amend, the Court will enter a final Order dismissing this civil action.

Dated:  November 21, 2025

Hon. Andrew G. Schopler
United States District Judge